# United States District Court
# Central District of California

| | |
|---|---|
| LATHER, INC., <br><br> Plaintiff, <br><br> v. <br><br> GILCHRIST & SOAMES, INC.; CELEBRITY CRUISES INC., <br><br> Defendants. | Case No. 2:19-cv-05868-ODW (SSx) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER [17]** |

## I. INTRODUCTION

Presently before the Court is Defendant Celebrity Cruises Inc.'s Motion to Transfer venue to the Southern District of Florida ("Motion"). (Mot. to Transfer ("Mot."), ECF No. 17.) For the following reasons, the Court **GRANTS** Defendant's Motion.[1]

## II. BACKGROUND

Lather, Inc. ("Lather") is a California corporation with its principal place of business in Pasadena, California. (Compl. ¶ 3, ECF No. 1.) Lather is a manufacturer and distributor of skin and hair products. (Compl. ¶ 8.) It owns an incontestable

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

trademark registration for the trademark LATHER (the "Mark"), for use on hair and body products like soap, body wash, and shampoo. (Compl. ¶¶ 10–11.)

Celebrity Cruises, Inc. ("Celebrity") is a luxury cruise line, incorporated in Florida with its principal place of business in Miami, Florida. (Mot. 1; Compl. ¶¶ 1, 5.) Lather alleges Gilchrist & Soames, Inc. ("Gilchrist") is a Delaware corporation with its principal place of business in Indiana. (Compl. ¶ 4.) Gilchrist notes that Indiana was its previous place of business and that its principal place of business is currently New Jersey. (Gilchrist Answer ¶ 4, ECF No. 29.) Gilchrist sells various skin and hair products and provided the allegedly infringing products at issue in this action to Celebrity. (Compl. ¶ 13; Gilchrist Answer ¶¶ 13–14; Celebrity Answer ¶ 14, ECF No. 11.)

Lather initiated this action against Celebrity and Gilchrist in the Central District of California, alleging that Celebrity and Gilchrist infringed upon Lather's trademark rights in the Mark. (*See* Compl. ¶ 1.) Specifically, Lather claims that Gilchrist used an identical mark on its skin and hair products, and supplied such products to Celebrity, which, in turn, provided the allegedly infringing products to Celebrity's cruise line customers. (Compl. ¶¶ 13–14.)

Lather further alleges that Gilchrist and Celebrity were aware of Lather's rights in the Mark because it pitched its hair and skin products to Celebrity using the Mark as early as 2014. (Compl. ¶¶ 15–16.) Lather also discovered that Gilchrist was using the Mark in 2005 on a hair product it sold to various third-party establishments. (Compl. ¶ 16.) In response to Lather's cease and desist demands, Gilchrist agreed, in writing, to stop selling products with the Mark on them as soon as it exhausted its limited inventory of products. (Compl. ¶ 16.)

Celebrity moves to transfer the case to Florida under 28 U.S.C. § 1404(a), contending that the Central District of California is an inconvenient location for this trademark lawsuit because many of the witnesses and the majority of documents pertinent to the case are located in Miami. (Mot. 1–3.) Additionally, Celebrity argues

that a substantial part of the relevant events giving rise to this case occurred in Florida. (Mot. 2–3.) Lather opposes the motion to transfer, arguing that Celebrity has not met its burden of demonstrating that the Southern District of Florida is a more convenient forum. (Opp'n to Mot. ("Opp'n") 2, ECF No. 23.)

## III. LEGAL STANDARD

A district court may transfer an action to any district or division where the action might have originally been brought to promote the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). Section 1404(a) "gives a district court broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

## IV. DISCUSSION

To transfer this case to the Southern District of Florida, the Court must find: 1) the transferee court is one where the action might have been brought, and 2) the parties' and witnesses' convenience, as well as the interest of justice, favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

### A. THE TRANSFEREE COURT IS ONE WHERE THE ACTION "MIGHT HAVE BEEN BROUGHT"

Here, there is no dispute that the transferee court is one where the action might have been brought. In its Complaint, Lather alleges causes of action for federal trademark infringement, false designation of origin, and unfair competition. (*See* Compl.) Lather's trademark infringement claims arise under federal law, and the remaining claims are a part of the same case or controversy. *See* 28 U.S.C. §§ 1331, 1367. Therefore, subject matter jurisdiction exists. Moreover, the Southern District of Florida has general personal jurisdiction over Celebrity because Celebrity is a

Florida corporation with its principal place of business is in Miami, Florida. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (1990); (*see also* Compl. ¶ 5).

Although Defendant Gilchrist is a Delaware corporation with its principal place of business in Indiana or New Jersey, Celebrity argues that personal jurisdiction nevertheless exists because Gilchrist is engaged in business in the Southern District of Florida. (Mot. 5.) Lather does not oppose on this point, and Gilchrist raises no objections in this regard. (*See generally* Opp'n; Gilchrist Answer; Joint Report, ECF No. 31.) Additionally, in its Answer, Gilchrist acknowledges that it sold the allegedly infringing products to Celebrity, located in Florida, further supporting the existence of personal jurisdiction in Florida. (Answer ¶¶ 13–14.)

Lastly, venue is proper in the Southern District of Florida because the parties assert that a substantial portion of the events giving rise to this claim occurred there. (Mot. 5; Decl. of Robert Hoyt ("Hoyt Decl.") ¶ 7, ECF No. 23-1; Compl. ¶ 14.) Accordingly, Lather could have brought this action in the Southern District of Florida and the first prong is met.

### B. CONVENIENCE AND INTEREST OF JUSTICE

As the Southern District of Florida is a proper venue, the decision to transfer turns on the convenience of parties and witnesses, and the interest of justice. *See Young Props. Corp. v. United Equity Corp.*, 534 F.2d 847, 852 (9th Cir. 1976). Once the Court determines that venue is proper, the movant must present strong grounds for transferring the action; otherwise, the plaintiff's choice of venue will not be disturbed. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit has noted that, in making the decision, a court may consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the

two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

Furthermore, in a trademark infringement cases, like the one here, a plaintiff must establish: (1) an ownership of a trademark right; (2) that was used by the defendant; "(3) in a way that is likely to cause consumer confusion and thus infringe upon the trademark right." *Adobe Sys., Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 966 (N.D. Cal. 2015) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985)). The likelihood of confusion is the central element of a trademark infringement claim. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). To determine a likelihood of confusion between related goods, courts use the *Sleekcraft* factors; that is, (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product line. *Id.* (discussing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 2003)). As trademark infringement is the gravamen of Lather's Complaint, the Court will consider relevant *Sleekcraft* factors in its examination of parties' and witnesses' conveniences, as well as the interest of justice.

### 1. *Convenience of the Witnesses and the Availability of Compulsory Process for Non-Party Witnesses*

"The convenience of the witnesses is often the most important factor in deciding whether a transfer under § 1404 is appropriate." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). In determining whether this factor favors transfer, the Court must consider the location and number of witnesses each side has and the relative importance of those witnesses.

*Fontaine v. Wash. Mut. Bank, Inc.*, No. CV 08-5659-PSG (Ex), 2009 WL 1202886, at *3 (C.D. Cal. Apr. 30, 2009).

The convenience of witnesses factor also includes "a separate but related concern, the availability of compulsory process to bring unwilling witnesses live before the jury." *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 820, 820 (N.D. Cal. 2008). "[T]he Court's subpoena power only extends outside of this district if the place of service is 'within 100 miles of the place specified for the deposition, hearing, trial, production or inspection.'" *Fontaine*, 2009 WL 1202886, at *5 (citing Fed. R. Civ. P. 45(b)(2)). Consequently, the Court accords greater weight to the inconvenience of non-party witnesses because party witnesses can be compelled to testify regardless of the forum in which the case is litigated. *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551 (N.D. Cal. 1988); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, No. C 06-2469 CW, 2006 WL 2868971, *4 (N.D. Cal. Oct. 6, 2006).

Here, Celebrity identifies its executive team as key witnesses who will be inconvenienced by the proceeding in California. (Decl. of Dominique Taleno ("Taleno Decl.") ¶ 7, ECF No. 19.) Similarly, Lather identifies employees as key witnesses who will be inconvenienced by having to testify in Florida. (Hoyt Decl. ¶ 10.) At first blush, it would appear that the inconvenience to the respective employee witnesses cancel each other out. However, once the relative importance of the witnesses' anticipated testimony is considered, this factor tips in favor of transfer. Whereas Lather's witnesses will testify about the use and development of its Mark (which does not appear to be in dispute) and pitch meetings (that apparently occurred in Florida), Celebrity's witnesses will testify regarding the central issues in the case, namely, the selection, development, adoption, and use of the allegedly infringing term "lather." (Mot. 6; Opp'n 6–7.)

More importantly, the relative convenience of non-party witnesses also weighs in favor of transfer. *STX,* 708 F. Supp. at 1555. Celebrity has identified one or more

witnesses affiliated with a third-party, Albatros, S.A., who will be inconvenienced absent transfer to the Southern District of Florida. (Taleno Decl. ¶ 9.) Albatros is the current supplier of Celebrity's onboard amenity kits, including the soap and shower gel products bearing the term "lather." (Taleno Decl. ¶ 9.) Albatros is an Italian company, and its only U.S. presence is in Miami, Florida. (Mot. 7; Taleno Decl. ¶ 9.) Accordingly, the witness or witnesses affiliated with Albatros will be substantially inconvenienced if the case is not transferred to Florida. Furthermore, if the case remains in California, Albatros's witness(es) will likely be outside the Court's subpoena power. *Fontaine*, 2009 WL 1202886, at * 5. This hurdle is eliminated if the action is transferred to the Southern District of Florida due to Albatros's presence in Florida. In contrast, Lather has identified no third-party witnesses who would be inconvenienced by transfer to the Southern District of Florida. Consequently, this factor weighs in favor of transfer.

> 2.  *Plaintiff's Choice of Forum and Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum*

Lather correctly points out that, in motions to transfer venue, the plaintiff's choice of forum is typically given considerable weight. (*See* Opp'n 5–6.) However, "where the forum lacks any significant contact with the activities alleged in the complaint, [a] plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." *Cohen v. State Farm & Cas. Co.*, No. C1:09-cv-1051 AWI DLB, 2009 WL 2500729, at *3 (E.D. Cal. Aug. 14, 2009) (collecting cases). In other words, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968).

In trademark cases, "a substantial part of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods," and not where the deceptive or misleading labels are affixed to the goods.

*Allstar Mktg. Grp., LLC*, 666 F. Supp. 2d at 1128 (internal quotations marks omitted); *see also Sykes Lab., Inc. v. Kalvin*, 610 F. Supp. 849, 860 n.8 (C.D. Cal. 1985) (observing that trademark infringement occurs in the district "where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's").

Here, Lather focuses its trademark infringement claim primarily on members of the public who received the infringing products from Celebrity on its cruise lines. (*See, e.g.*, Compl. ¶ 18 ("Defendants' goods, which feature the LATHER Mark, are such that prospective purchasers or consumers of the goods of Defendants and the goods of Plaintiff, have been confused as to source.").) As these allegations suggest, and as Celebrity points out, the public confusion occurred primarily in Florida, as the majority of ships stocked with the shower gel and soap products departed from Florida. (*See* Mot. 11; Taleno Decl. ¶ 6 ("62% of Celebrity's cruises departing from U.S. ports from 2016 through 2019 departed from ports in the Southern District of Florida.").) Although Lather alleges that "California will also be the source of actual instances of confusion," it does not indicate that there was public confusion by members of the public in California and fails to provide any specificity in that regard. (Opp'n 8 (citing Hoyt Decl. ¶ 9).) Lather refers to documents located in California that relate to alleged public confusion. (*See* Hoyt Decl. ¶ 9.) However, the location of documents, which can be easily and conveniently used in electronic form in Florida, would not override the inconvenience of challenging (in a California courtroom) evidence of customer confusion that occurred in Florida.

Additionally, Lather alleges that Celebrity and Gilchrist were aware of Lather's trademark rights in the Mark and intentionally infringed upon it anyway. (*See* Compl. ¶¶ 15, 16, 19.) However, the majority of the operative facts evidencing intent occurred predominantly in Florida. In support of its allegations that Celebrity acted knowingly and intentionally, Lather asserts that Celebrity was aware of Lather's Mark because, from 2012 to 2017, Lather made several pitches to Celebrity to sell its soaps

and shower products. (Opp'n 4.) Yet, these discussions between Celebrity and Lather about a potential supplier relationship occurred at Celebrity's offices in Miami. (Taleno Decl. ¶ 12.) Celebrity's representatives have never visited Lather's offices in California. (Taleno Decl. ¶ 12.) Further, Celebrity negotiated a supplier agreement with Gilchrist in Florida, by which Gilchrist delivered all on–board amenity products, including the allegedly infringing products, to Celebrity's facility in Florida. (Taleno Decl. ¶ 5.) Consequently, most of the relevant events supporting Lather's allegation that Celebrity intentionally infringed upon the Mark occurred in Florida.

Finally, as to Gilchrist's intent, Lather alleges that it discovered that Gilchrist was marketing and selling its goods bearing the Mark in 2005. (Compl. ¶ 16.) After Lather confronted it, Gilchrist agreed to cease using the Mark and entered into an agreement with Lather. (Compl. ¶ 16; Opp'n 8–9.) However, it is unclear where the agreement was negotiated and executed, as Lather provides only a vague statement about partial execution in California. (Opp'n 8–9 ("[Gilchrist's] previous agreement to cease its use of the LATHER mark, was negotiated and executed (at least in part) in California").) In contrast, the supply agreement between Gilchrist and Celebrity regarding the allegedly infringing product was clearly negotiated and entered into in the Southern District of Florida. (Taleno Decl. ¶ 5.) Therefore, most of the events relevant to proving Gilchrist's intent occurred in Florida.

Accordingly, because most of the relevant facts in this case occurred in Florida, this factor weighs in favor of transfer.

### 3. *Ease of Access to Evidence*

The Court notes that this factor is not a predominant concern in deciding venue as "advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 674 F. Supp. 2d at 1149. Here, Lather alleges that documents relating to adoption, registration, and use of the Mark are in California. (Opp'n 5.) However, most of the evidence of the alleged infringement will be derived from Celebrity's corporate records. For instance, all of Celebrity's documents

regarding the selection, development, and use of the accused products are located in Florida. (Mot. 6.) As such, much of the documentary evidence in this case—to the extent that such evidence may not be available in electronic format—is likely located at Celebrity's headquarters in the Southern District of Florida. Thus, the Court finds this factor slightly favors transferring the action to the Southern District of Florida.

### 4. *The Respective Parties' Contacts with the Forum*

In evaluating a motion to transfer, a court may also consider "the respective parties' contacts with the forum." *Jones,* 211 F.3d at 498. Here, as noted, Lather is a California corporation, whereas Celebrity is a Florida corporation with its principal place of business in Florida. (*See* Compl. ¶¶ 3, 5.) Celebrity asserts that it has very limited contacts with California. (Taleno Decl. ¶ 10.) Celebrity argues it has no physical offices in California, and that only 2% of its cruise ships depart from California versus 62% departing from Florida. (Mot. 11.) Conversely, Lather argues that it has no contacts with Florida as it operates out of California. (Hoyt Decl. ¶¶ 5, 12.) Celebrity, however, points out that Lather supplies bath and body products to at least one hotel in Palm Beach, Florida, and sells its products nationwide through the Amazon website. (Reply 4.) Based on the evidence presented, the Court finds that both parties have substantial contacts with the respective forums, rendering this factor neutral.

### 5. *The Remaining Factors Are Not Determinative*

While the majority of the factors examined above weigh in favor of transfer, the remaining factors typically considered by courts in a motion to transfer are neutral or of little weight. For example, the Central District of California and the Southern District of Florida are equally versed in federal trademark infringement law. Consequently, the factor considering a state's familiarity with the governing law is neutral and immaterial.

With regard to the cost of litigation, Celebrity argues that absent transfer to the Southern District of Florida, it will overwhelmingly bear the costs of litigation;

whereas Lather argues that a transfer would disproportionally shift the costs of litigation to Lather. (*See* Mot. 10; Opp'n 13.) Lather also argues that Celebrity is better equipped to absorb the cost of litigation because Celebrity is a larger corporation with greater resources. (Opp'n 12–13.) Although the Court may consider relative financial ability of the parties, it is accorded little weight. *Brackett*, 619 F. Supp. 2d at 820. Accordingly, the Court concludes that this factor does not carry sufficient weight to avoid a transfer.

Furthermore, courts are "not restricted to mechanically counting the factors" when deciding motions to transfer. *See Ancora Techs. v. Toshiba Am. Info. Sys.*, No. SACV 08-0626 AG (MLGx), 2009 WL 10670590, at *4 (C.D. Cal. Feb. 27, 2009) (citing *Jones*, 211 F.3d at 498). Instead, courts may look at convenience and the interest of justice more holistically. *Id.* Applying a holistic view on the present record, Florida is a more appropriate venue than California, as the significant events at the core of Lather's Complaint, including customer confusion regarding the accused goods, occurred in Florida.

Thus, after an examination of the nature of Lather's contentions and a careful weighing of the relevant factors, the Court finds that the requested transfer will promote the convenience of the parties and witnesses and the interest of justice.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Celebrity's Motion to Transfer Venue. (ECF No. 17.) The Clerk of the Court shall transfer this case to the United States District Court for the Southern District of Florida, 400 North Miami Avenue, Miami, FL 33128.

**IT IS SO ORDERED.**


March 9, 2020

$\rule{3in}{0.4pt}$
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**